**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

01 JUL 12  PM 12: 50

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHAEL L. JONES, on behalf )
of himself and all others )
similarly situated, )
)
      Plaintiffs, )
)
vs. )        Civil Action No. CV-99-S-2537-NE
)
THE KRYSTAL COMPANY, INC. )
)
      Defendant. )

ENTERED

JUL 1 2 2001



## MEMORANDUM OPINION

Michael L. Jones commenced this action on September 21, 1999, on behalf of himself and

all others similarly situated. The action presently is before the court on the parties' joint request for

approval of a proposed consent decree designed to achieve global settlement of claims brought

pursuant to Title III of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12111 *et*

*seq*.

## I. FACTUAL BACKGROUND

### A.    The Claims

Plaintiffs allege that The Krystal Company, Inc. ("Krystal") failed to adhere to ADA

requirements mandating that public restroom facilities be accessible to wheelchair-bound patrons:

During January, February, and March of 1999, on three separate occasions,
Plaintiff, MICHAEL L. JONES, was a patron of the Krystal restaurant in Decatur,
Alabama. Plaintiff was restricted to a wheelchair. Plaintiff attempted to enter the
restroom in the Krystal restaurant and was denied access due to the fact that the
entrance to the restroom was less than the minimum requirement under 4.13.5 of the

1

ADA Accessibility Guidelines, and therefore was not wide enough to admit his wheelchair.

(Complaint ¶ 15.) Plaintiffs contend that similar deficiencies exist in a number of Krystal restaurants.

## B.    Discovery by the Parties

Following the institution of this action, the parties agreed to expedite discovery in an effort to resolve the controversy. The parties exchanged interrogatories and document requests. (Tr. at 109: 17-20.) Simultaneously, the parties engaged in settlement discussions, which led to the exchange of information beyond that specifically sought through formal written discovery. Krystal produced information outlining its past and present financial condition, the number of restaurants with restrooms not accessible to wheelchair-bound patrons, the approximate costs associated with renovating the restrooms to make them wheelchair accessible, and Krystal's ability to pay the costs of renovation. (Tr. at 110: 1-17). Plaintiffs' counsel produced information concerning the suitability of Michael L. Jones to act as representative of the putative class, and, counsel's ability and experience in handling class action litigation.

## C.    Proposed Settlement of Claims

Following this exchange of information, through both formal and informal discovery, the parties filed a motion on November 20, 2000, seeking court approval of a proposed stipulation of settlement. This court conducted a hearing on December 1, 2000, and directed the parties to perform additional research to clarify a number of issues associated with the settlement proposal. The parties did so, and filed a second joint motion for preliminary court approval of settlement on January 19, 2001.

2

The fact that the parties desire settlement does not diminish this court's responsibilities, except in one respect: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 2248, 138 L.Ed.2d. 297 (1997). In all other respects, the remaining Rule 23 class certification criteria "demand undiluted, even heightened, attention in the settlement context." *Id.* "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

## D. Terms of Proposed Settlement

The principal terms of the proposed settlement agreement are as follows:

(1) For the purposes of settlement only, the following class is defined and conditionally certified pursuant to Rules 23(a), (b)(2), and (c)(1) of the Federal Rules of Civil Procedure: All individuals who, (i) following the effective date of the Americans with Disabilities Act of 1990 (*i.e.*, July 26, 1992), (ii) were patrons of a Krystal-owned restaurant, (iii) were confined to a wheelchair, and (iv) were denied access to the restroom of a Krystal-owned restaurant in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

(2) Defendant owns 190 Krystal-owned restaurants that were constructed prior to enactment of the ADA, and that contain restrooms that may not be fully accessible to wheelchair bound patrons. Defendant will renovate all 190 Krystal-owned restaurants over the course of a ten year period to make the restrooms in those restaurants fully accessible to wheelchair bound patrons in compliance with the accessibility guidelines specified by the ADA and interpretative regulations promulgated under Congressional authorization. During the first calendar year following final court approval of the parties' proposed Consent Decree, defendant will renovate ten Krystal-owned restaurants. During years two through ten following final court approval of the parties' proposed Consent Decree, defendant will renovate twenty Krystal-owned restaurants each year, until all Krystal-owned restaurants have

3

restrooms that are in full compliance with the accessibility guidelines specified by the ADA. Defendant's obligation to renovate a particular restaurant (or restaurants) will be voided, in the event it closes or sells such restaurant(s) prior to the completion of renovations.

(3)     In the event this court grants final approval to the parties' proposed Consent Decree, defendant further agrees to pay to plaintiff the sum or amount of $10,000.00 by check drawn upon defendant made payable to the order of Michael L. Jones, for the purpose of compensating him for the time and effort he has expended in acting as class representative.

(4)     In the event the parties' proposed Consent Decree is granted final court approval, defendant agrees to pay plaintiff's attorneys' fees, expenses, and costs in the sum of $50,000.00, by check drawn upon defendant and made payable to the law firm of Pittman, Hooks, Dutton & Hollis, P.C., which amount represents compensation associated with the services rendered in the past and to be rendered in the future to plaintiff and the settlement class.

(Revised Conditional Consent Decree at ¶¶ 4, 7-12, 16.)

## E.     Preliminary Fairness Hearing

This court began its inquiry by conducting a preliminary fairness hearing[1] in Huntsville,

Alabama on February 1, 2001, to determine whether there was,

in effect, "probable cause" to submit the proposal to members of the class and to hold a full-scale hearing on its fairness, at which all interested parties [would] have an opportunity to be heard and after which a formal finding on the fairness of the proposal [would] be made.

*In re: Mid-Atlantic Antitrust Litigation,* 564 F. Supp. 1379, 1384 (D. Md. 1983).

Through pleadings, briefs, and oral representations of counsel in open court, counsel for the

parties advised this court of the facts and circumstances leading to the proposed consent decree.

Based on this information, the court determined that the proposed settlement was within the range

---

[1]*See, e.g., Manual for Complex Litigation Third* § 30.41 (1995) ("Approval of class action settlements involves a two-step process. First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation.").

of possible approval, and, that a class should be conditionally certified.[2]  A Conditional Consent

Decree was entered on February 26, 2001.  That decree subsequently was revised, however, and a

Revised Conditional Consent Decree was entered on March 16, 2001 ("Consent Decree"),

conditionally approving the terms of the proposed settlement.

## F.   Notice to Class

The Consent Decree ordered that notice be provided to all members of the putative class by

the following means:

> A copy of the notice attached to this Revised Conditional Consent Decree as
> "Exhibit A" shall be printed in the metropolitan newspapers in all metropolitan areas
> in which restaurants owned by Krystal are located, and, in which Krystal runs
> advertisements directed to patrons of its restaurants. A list of such newspapers is
> attached to this Revised Conditional Consent Decree as "Exhibit B."

> The notice shall be worded in plain English, and shall be of sufficient size to
> be seen easily by the average reader.

> The first notice shall be published in the newspapers listed in Exhibit B on
> Sunday, April 8, 2001; the second notice shall be published in the same newspapers
> on Friday, April 13, 2001; and, the third shall be published in the same newspapers
> on Wednesday, April 18, 2001.

(Consent Decree ¶¶ 21-23.[3])

---

[2]Fed. R. Civ. P. 23(c)(1) provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." (Emphasis supplied.)

[3]At the final fairness hearing held on May 3, 2001, Krystal presented the court with self-authenticating proofs of publication (Exhibits A-C to the Affidavit of Christopher H. Steger) demonstrating compliance with the Consent Decree as it pertained to publication of notice to putative class members. In compliance with the court's directive, the notices were published in a timely manner reasonably calculated to reach all putative class members.

One newspaper, the Brunswick, Georgia *News*, does not run a Sunday edition; as such, the notice was instead published on Monday, April 9, 2001. (Tr. at 81: 5-13). In addition, due to a scheduling error, the Montgomery, Alabama *Advertiser* published its notices on April 18, 20, and 22, instead of the dates originally ordered (April 8, 13, and 18). (Tr. at 79: 12-80:4). The notices, however, were run on a Sunday, Wednesday, and Friday, as instructed by the court. (Tr. at 80: 5-10). The court believes that these notices were sufficient to provide putative class members with notice as required by the court. Consequently, these exceptions do not render the notices deficient in this case.

5

In the opinion of this court, the content of the published notices was reasonably calculated under all of the circumstances to: inform interested parties of the essential terms of the proposed settlement; explain how (and where) additional information on the detailed terms of settlement could be obtained; and afford class members a reasonable opportunity to present objections to the terms of settlement. The notices satisfactorily conveyed to putative class members all information relevant to making an informed decision.

This court therefore finds that the published notices afforded the class constitutional due process, and complied with the following criteria of Federal Rule of Civil Procedure 23(c)(2):

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

At the final fairness hearing held on May 3, 2001, Krystal presented the court with self-authenticating proofs of publication (Exhibits A-C to the Affidavit of Christopher H. Steger) demonstrating compliance with the Consent Decree as it pertained to publication of notice to putative class members. In compliance with the court's directive, the notices were published in a timely manner reasonably calculated to reach all putative class members.

## G.    Objections

The parties received 21 inquiries from putative class members concerning the terms of the proposed settlement. Only four objections were filed with the clerk of court; moreover, only one of

6

these objections was received prior to the April 26, 2001 deadline established by the court for receipt

of objections.

●   One "objection," filed by John Cantrell, simply noted that he wished to become a part of the class action. This is not truly considered an objection to the terms of the proposed settlement.

●   One objection, filed by Florence Hall, stated that a "jury trial" should be held in this case and that putative class members should be paid a monetary award similar to that to be paid to class representative Michael L. Jones.

●   One objection, filed by Deborah Cunningham, stated her desire that a restaurant operated by Krystal in Memphis, Tennessee be made wheelchair-accessible immediately. This objection was subsequently withdrawn by means of a written pleading filed with the court.

●   Finally, one objection, filed by John Redwine, requested acceleration of the ten-year time period for renovation of Krystal's restrooms and requested that Mr. Redwine be paid a monetary award similar to that to be paid to class representative Michael L. Jones. This was the only objection filed in a timely manner.

## H.   Final Fairness Hearing

In accordance with Rule 23(e),[4] the Consent Decree also required that notice be given to the

class of a hearing to be held on May 3, 2001, at the United States Courthouse in Huntsville,

Alabama, at which arguments and evidence could be presented in support of, or in opposition to, the

proposed settlement:

A hearing shall be held in the United States Courthouse located at 101 Holmes Avenue, Huntsville, Alabama, on Thursday, May 3, 2001, beginning at 10:00 o'clock a.m., to consider whether the parties' proposed settlement agreement and Consent Decree should be accorded final court approval.

Members of the class conditionally certified in paragraph B.4 *supra* are not required, but shall be entitled to attend the hearing.

---

[4]Fed. R. Civ. P. 23(e) provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

At such hearing, the Court shall consider the fairness, adequacy, and reasonableness of the parties' proposed settlement and Consent Decree, in light of the information and legal authorities provided by the parties, any objections, any statement by any objectors at the hearing, and the statements of counsel at the hearing.

(Consent Decree ¶¶ 27-29.) The notice of final hearing published pursuant to that order complied

with all standards listed in the *Manual for Complex Litigation Third* § 30.212, at 228.

No putative class members (other than class representative, Michael L. Jones) or objectors

attended the hearing. The parties presented testimony and evidence at the hearing with regard to the

issues discussed herein.

## II. APPLICATION OF LAW TO FACTS

### A.    Class Certification

District courts are required to conduct a rigorous analysis of the requirements of Federal Rule

of Civil Procedure 23, even when presented with a request for settlement-only class certification.

*See, e.g., Amchem Products,* 521 U.S. at 620, 117 S.Ct. at 2248; *General Telephone Company of the*

*Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

Prior to the decision in *Amchem Products,* four circuits held that "settlement obviates or

reduces the need to measure a proposed class against the enumerated Rule 23 requirements."

*Amchem Products,* 521 U.S. at 618-19, 117 S.Ct. at 2247 (citing cases). The Supreme Court

emphatically rejected that view.

The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments —— checks shorn of utility —— in the settlement class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind —— class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.

8

Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, ... and the court would face a bargain proffered for its approval without benefit of adversarial investigation....

Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted —— that if a settlement is fair, then certification is proper.

*Id.* at 621-22, 117 S.Ct. at 2248-49. Therefore, a district court retains broad discretion in deciding

whether to certify a class, *see Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68

L.Ed.2d 693 (1981), but *Amchem Products* mandates that such discretion be exercised within the

framework of Rule 23.

Further, the parties seeking class certification bear the burden of proof. *See Falcon,* 457 U.S.

at 161, 102 S.Ct. at 2372.

## 1. Class Certification Requirements Under Fed. R. Civ. P. 23(a)

The four basic prerequisites to the maintenance of a class action are defined by Rule 23 as

numerosity, commonality, typicality, and adequacy of representation.

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable [*the numerosity requirement*], (2) there are questions of law or fact common to the class [*the commonality requirement*], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [*the typicality requirement*], and (4) the representative parties will fairly and adequately protect the interests of the class [*the adequacy of representation requirement*].

(Fed. R. Civ. P. 23(a).) Each of these threshold requirements are addressed below.

### a. Rule 23(a)(1): *numerosity*

9

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." "The reason for [the numerosity] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." Herbert B. Newberg *et al.*, *Newberg on Class Actions* § 3.01, at 3-4 (3d ed. 1992) ("*Newberg*"). Several general principles may be derived from case law on this subject:

1. Impracticability short of impossibility is sufficient;

2. Evidence of exact class size is not required;

3. When the class is large, numbers alone should be dispositive;

4. When the class is small, factors other than number will be significant; and

5. A common sense approach is contemplated by Rule 23.

*Id.* § 3.03. Pursuant to these general rules, while the number of individuals in the potential class is not dispositive, it is given substantial weight when evaluating numerosity.

> Certainly, when the class is very large —— for example, numbering in the hundreds —— joinder will be impracticable; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower ... however, the plaintiff whose class numbers in the forty-or-more range should have a reasonable chance of success on the basis of number alone.

*Id.* § 3.05. Thus, "[w]hile there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment." 5 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 23.22 [3][a], at 23-63 (3d ed. 1997); *see also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986).

10

The present case involves renovations to 190 restaurants located in a number of states throughout the Southeast. Many of these restaurants are located in large metropolitan areas. While no exact number is available with regard to the number of Krystal customers who are confined to wheelchairs, it is logical to assume that the number of putative class members in this case would number in the hundreds, if not thousands. For that reason, common sense dictates, and the court finds, that the requirement of numerosity is met in this case.

**b.    Rule 23(a)(2):** *commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" to justify certification.  Together, this requirement and the numerosity test of Rule 23(a)(1) "form the underlying conceptual basis supporting class actions." *Newberg* § 3.10, at 3-47. As the Supreme Court observed in *Falcon*, the class action device

> was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.... Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. ... For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.

*Falcon*, 457 U.S. at 155, 102 S.Ct. at 2369 (citations and internal quotations omitted).

The commonality requirement "is easily met in most cases." *Newberg* § 3.10. That is because Rule 23(a)(2) "does not require that all ... questions of law and fact raised by the dispute be common." *Cox*, 784 F.2d at 1557 (emphasis supplied). Rather, the test for commonality "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Newberg* § 3.10. Further, the rule "requires only that resolution of the common

11

questions affect all or a substantial number of the class members." *Shipes v. Trinity Industries,* 987 F.2d 311, 316 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993).

In accordance with the foregoing standards, the court in *Arnold v. United Artist Theatre Circuit, Inc.,* 158 F.R.D. 439 (N.D. Cal. 1994), held that "[i]nadequate wheelchair accommodations at particular theaters are very likely to affect all wheelchair users in the same way ... thus the state of such accommodations at defendant's various theaters, and the legal adequacy of those accommodations, are issues of fact and law common to all those disabled persons affected by them." *Id.* at 449. In like manner, the issue before this court concerns inaccessible restroom facilities which, by their very nature, will affect all wheelchair-bound patrons of Krystal restaurants in the same manner. The issues involved herein thus are common to all members of the plaintiff class, and this action meets the commonality requirement of Rule 23(a)(2).

### c. Rule 23(a)(3): *typicality*

Rule 23(a)(3) requires that "the claims of the representative parties [be] typical of the claims ... of the class." Class representatives must possess the same interests, and suffer the same injuries, as absent class members. *See, e.g., Sollenbarger v. Mountain States Telephone and Telegraph Co.,* 121 F.R.D. 417, 424 (D. N.M. 1988). Typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and to the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Newberg* § 3.13. Under this rule, "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Id.*

12

"Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* § 3.15. In addition, neither differences in the amount of damages claimed, nor the fact that unique defenses may be asserted against a class representative will render his or her claims atypical. *Id.* In other words, when the interests of the class representative are sufficiently aligned with those of the putative class, then the named plaintiff, in pursuit of his or her personal claims, also will advance the interests of absent class members.

Claims brought under Title III of the ADA by a disabled plaintiff on behalf of similarly disabled class members generally satisfy the typicality requirement of Rule 23(a)(3).

> Indeed, in a public accommodations suit such as this one where disabled persons challenge the legal permissibility of architectural design features, the interests, injuries, and claims of the class members are, in truth, identical such that any class member could satisfy the typicality requirement for class representation.

*Arnold,* 158 F.R.D. at 450; *see also, e.g., Civic Ass'n of Deaf of New York City, Inc. v. Giuliani,* 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (typicality exists where representative plaintiffs, "like every other member of the proposed class, are or represent deaf or hearing-impaired individuals").

Here, Michael L. Jones, like all members of the putative class, is confined to a wheelchair. (Tr. at 89:25-90:2). As a wheelchair-bound patron of a Krystal restaurant in Decatur, Alabama, he has been unable to gain access to the restroom of that facility due to the widths of the doorway to, and, the restroom itself. (Tr. at 90: 24-93:15). The lack of wheelchair access to Krystal restrooms is a barrier that equally affects all members of the putative class. Therefore, based upon the evidence presented, this court finds that Mr. Jones' claims are typical of those maintained by the plaintiff class as a whole.

13

### d.  Rule 23(a)(4):  *adequacy of representation*

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." Assessment of the adequacy of representation turns upon two subsidiary issues: (1) whether representative parties possess interests common with unnamed class members; and (2) whether the representative parties will vigorously prosecute the interests of absent class members through qualified and competent counsel.

The first issue is synonymous with the typicality requirement of Rule 23(a)(3):  *i.e.*, if the named plaintiff's claims are not typical of the class, then the class representative cannot fairly and adequately protect the interests of absent class members.  *See In re American Medical Systems, Inc.,* 75 F.3d 1069, 1083 (6th Cir. 1996)("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members."). As previously discussed, the typicality prerequisite of Rule 23(a)(3) has been met. The court now elaborates on that finding with these determinations: no conflicts have been demonstrated between the claims of Michael L. Jones and the interests of absent class members; and, in the event of trial, Mr. Jones would vigorously prosecute the interests of the class.

Competence of counsel is the other component of the adequacy requirement. As discussed elsewhere in this opinion (see *infra* § II.B.2.d), plaintiffs' counsel has extensive experience in the litigation of similar civil rights actions in courts throughout the country, and is familiar with the particular responsibilities and considerations involved in the prosecution of a class action such as this one. Neither defendant nor this court questions the skill of plaintiffs' counsel, or their ability

14

to vigorously and competently represent the class. For these reasons, this court find that the requirements of Rule 23(a)4) and, consequently, the requirements of Rule 23(a) as a whole, have been met.

## 2. Class Certification Requirements Under Fed. R. Civ. P. 23(b)

In addition to satisfying all prerequisites of Rule 23(a), parties seeking class certification must demonstrate that the action is maintainable under at least one of the three categories of Rule 23(b). Here, plaintiffs have sought certification under Rule 23(b)(2).

A Rule 23(b)(2) class is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is intended primarily to address civil rights actions. *See Amchem Products*, 521 U.S. at 614, 117 S.Ct. at 2245 (holding that civil rights cases against parties charged with unlawful, class-based discrimination are "prime examples" of 23(b)(2) class actions). Even so, a 23(b)(2) class is expressly limited to cases in which "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" will be appropriate and, thus, deliberately excludes actions in which monetary damages are the primary, or sole relief sought.

Injunctive relief (in the form of renovations to existing, or construction of new, restroom facilities, to make such public accommodations accessible to wheelchair-bound patrons) is the sole remedy for violations of Title III of the ADA; monetary damages are not available to individual plaintiffs in a private action. *See, e.g., Jairath v. Dyer*, 154 F.3d 1280, 1283 (11th Cir. 1998).

15

To the extent that Krystal-owned restaurants have restrooms that are inaccessible to wheelchair-bound patrons, all such patrons are equally affected by those deficiencies. As such, plaintiffs allege that Krystal has "failed to act ... on grounds generally applicable to the class." Consequently, a 23(b)(2) class is appropriate, and this court finds that certification of a class action is appropriate under Fed. R. Civ. P. 23.

**B.     Fairness of the Proposed Settlement**

The policy of federal courts favoring voluntary resolution of litigation through settlement is particularly strong in the context of class actions. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).[5] Notwithstanding such proclivity, Federal Rule of Civil Procedure 23(e) mandates: "A class action shall not be dismissed or compromised without the approval of the court."

The district court's primary responsibility when evaluating a proposed class action settlement pursuant to Rule 23(e) is to decide whether it is "fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Manual for Complex Litigation Third* § 30.42, at 238 (1995); *see also, e.g., Leverso v. SouthTrust Bank,* 18 F.3d 1527, 1530 (11th Cir. 1994); *In re Smith,* 926 F.2d 1027, 1028-29 (11th Cir. 1991).

**1.     Standards for evaluating fairness**

Factors that may be weighed when subjectively assaying such ephemeral qualities as "fairness, reasonableness, and adequacy" include the following:

(1)     the reasonableness of the settlement in light of the attendant risks of litigation, and the best possible recovery available to plaintiffs;

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

(2)     the amount and nature of discovery or evidence obtained by the parties to date;

(3)     the evaluation by the court of the terms and conditions of the settlement;

(4)     the recommendation of counsel of record, implicit in which is a showing that counsel are sufficiently experienced in class action litigation;

(5)     the future expense and likely duration of litigation if the settlement is rejected;

(6)     the recommendation of neutral parties;

(7)     the number of objectors and nature of objections;

(8)     the presence or absence of good faith in negotiations, as well as a showing of an absence of collusion; and

(9)     the ability of the defendant to withstand greater liability than that proposed in the settlement agreement.

*See Manual for Complex Litigation Third* § 30.42, at 238; *see also Cotton*, 559 F.2d at 1330-31. As set forth below, this court has evaluated the proposed settlement in the light of the foregoing standards, and concludes that the settlement is fair, reasonable, and adequate.

## 2.     Application of standards to facts

Analysis of each of the foregoing factors is based upon the pleadings and other materials submitted by the parties, the testimony and documentary evidence offered at the May 3, 2001 final fairness hearing, and this court's review of applicable law.

### a.     The reasonableness of the proposed settlement in light of the attendant risks of litigation and the best possible recovery available to plaintiffs

The settlement proposed by the parties provides that Krystal will renovate restrooms in its restaurants to make them fully accessible to wheelchair-bound patrons, as required under the ADA's Accessibility Guidelines. Following the renovation of these public accommodations, the restrooms

17

in all Krystal-owned restaurants will be fully compliant with the ADA. (Tr. at 28: 15-18). This is the full recovery which plaintiffs could obtain in the event this action were to proceed to litigation on the merits. Further, there is no other remedy available to plaintiffs which is not fully provided for under the terms of settlement proposed by the parties.[6] As such, the substantive results to be achieved through the proposed settlement are reasonable and adequate, in light of the possible recovery available through litigation and the likelihood of recovery by plaintiffs.

### b. The amount and nature of discovery or evidence obtained by the parties to date

As explained in § I.B *supra*, the parties conducted discovery prior to agreeing upon a settlement proposal. Although the discovery conducted was a combination of formal discovery methods and informal exchanges of relevant information, it was adequate to fully apprize the parties of the relative strengths and weaknesses of each other's respective positions. The parties were able to make an educated and informed proposal for a resolution of the controversy that is in the best interests of all affected parties. Further, expenses that would have been incurred as a result of further discovery were avoided, with the mutual goal of making such funds available to renovate restrooms. The evidence presented at the fairness hearing demonstrated to this court that the discovery and evidence obtained by the parties in this case was sufficient to arrive at a knowledgeable, informed resolution of the action.

### c. Evaluation of the terms and conditions of the settlement

### i. Payment to Michael L. Jones

---

[6]The schedule for renovation of these facilities is discussed further *infra*, in § II.B.2.c.iii.

The settlement contemplates a payment of $10,000 to Michael Jones as the class representative. (Consent Decree at ¶ 12). The Eleventh Circuit has held that "a disparate distribution favoring the named plaintiffs requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class," and that "a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness." *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1147, 1148 (11th Cir. 1983).⁷ Even so, a disproportionate distribution raises only an inference of unfairness, which

> may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations. Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the "cloud of collusion which such a settlement suggests."

*Id.* at 1148 (citations omitted).

When evaluating a special benefit to be paid to the named class representative, courts examine a wide range of "legitimate considerations," including: (1) the actions taken by class representatives to protect the interests of absent class members and others; (2) whether those actions resulted in substantial benefit to the class members; and (3) the amount of time and effort spent by the class representatives in pursuing the litigation. *See Spicer v. Chicago Board Options Exchange, Inc.,* 844 F. Supp. 1226, 1266 (N.D. Ill. 1993).⁸

---

⁷In *Holmes,* the Eleventh Circuit rejected a settlement in which eight named plaintiffs were to receive approximately one-half of a $43,775 lump-sum, back-pay award made to a class of 126 persons, with the remainder distributed among the other 118 members of the class.

⁸For discussion of incentive awards for the efforts of, and risks incurred by, class representatives, see, *e.g., White v. National Football League,* 41 F.3d 402, 408 (8th Cir. 1994); *Thornton v. East Tex. Motor Freight,* 497 F.2d 416, 420 (6th Cir. 1974); *Huguley v. General Motors Corp.,* 128 F.R.D. 81, 85 (E.D. Mich. 1989), *aff'd,* 925 F.2d 1464 (6th Cir.), *cert. denied,* 502 U.S. 909, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991); *In re Southern Ohio Correctional Facility,* 175 F.R.D. 270, 275-76 (S.D. Ohio 1997); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995); *In re Domestic Air Transp. Antitrust Litigation,* 148 F.R.D. 297, 358 (N.D. Ga. 1993); *Enterprise Energy v.*

Based upon the foregoing factors, courts repeatedly have held that additional, reasonable financial payments to named plaintiffs are appropriate, given the additional effort and time expended by such individuals throughout the course of the litigation. *See, e.g., Kogan v. Aimco Fox Chase, L.P.*, 193 F.R.D. 496, 504 (W.D. Mich. 2000) (fair to award named plaintiffs additional \$4,500, considering the extra time and effort they put into the litigation); *Collins v. Pension Benefit Guaranty Corp.*, 1996 WL 335346, *6 (D.D.C. Jun. 7, 1996) (unpublished decision) (additional payments to named plaintiffs "are reasonable in light of their investments of time, money, and effort on the part of the class. The named Plaintiffs undertook a financial commitment to this litigation, and invested significant time through their participation in discovery, consultation with Class Counsel, and review of the proposed settlement.").

Similarly, in the present case, Michael Jones had extensive personal involvement in taking the initiative to contact legal counsel regarding the facts underlying this lawsuit. He obligated himself to participate personally in the litigation process. As Mr. Jones testified at the final fairness hearing, he has continued to participate in the lawsuit, reviewing documents and contacting class counsel with questions and information. (Tr. at 95: 6-16). Mr. Jones prepared for, and attended, the fairness hearing. He offered testimony concerning his role in the lawsuit, the underlying claims, and his participation as class representative. Mr. Jones's efforts have inured to the benefit of the class as a whole. Further, his efforts have facilitated the resolution of this lawsuit, resulting in an agreement by Krystal to renovate the restrooms in 190 restaurants to make them wheelchair accessible.

---

*Columbia Gas Transmission,* 137 F.R.D. 240, 250 (S.D. Ohio 1991); and *In re Dun & Bradstreet Credit Serv. Customer Litigation,* 130 F.R.D. 366 (S.D. Ohio 1990).

Given the time and effort expended by Mr. Jones, this court finds that the amount to be paid to him is not disproportionate to his efforts on behalf of the class and the personal risks that he incurred. Accordingly, this court finds the $10,000 payment to Mr. Jones to be fair and reasonable.

### ii. Payments to class counsel

The Consent Decree further contemplates that attorneys' fees be paid to class counsel in the amount of $50,000. (Consent Decree at ¶ 16). "The defendants in a class action settlement may properly agree to pay the plaintiffs' attorneys' fees and expenses ... Such an agreement may ... provide for specific sums." *Newberg* ¶12.03. In the present case, class counsel have expended substantial time, effort, and money in pursuing this litigation. The attorneys' fee contemplated in this case is relatively small when compared to the fees generated in similar class actions. In addition, and of significant importance, is the fact that this fee takes into account the requirement that Pittman, Hooks, Dutton & Hollis, P.C., be involved in monitoring compliance with the terms and conditions of the settlement for a period of ten (10) years. As such, the amount of attorneys' fees in this case appears to be reasonable, given the time and effort expended (and to be expended) by class counsel.

Moreover, the attorneys' fee to be paid to class counsel will have no adverse effect upon the plaintiff class as a whole. Because monetary damages are not available to plaintiffs in Title III ADA cases, *Jairath*, 154 F.3d at 1283, the payment of the above amount does not in any way affect the recovery of any other class member in this lawsuit. The putative class members cannot recover monetary damages in this case; therefore, payment of the above amount will not "siphon off" any amounts recoverable by members of the putative class.

21

Also, because this cash payment is small in comparison to the total cost of the proposed renovations, the fee will not affect the ability of Krystal to make the proposed renovations or, for that matter, the schedule under which the proposed renovations will be made. As such, these payments will not in any way compromise or injure the interests of the putative class members.

This court recognizes that the negotiation of attorneys' fees contemporaneously with the settlement of the merits of a dispute may potentially create a conflict between class counsel and his or her clients, given the danger of collusion between class counsel and the defendant in such a situation. *See, e.g., Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 525 (E.D. Tex. 1995). As such, where there has been simultaneous negotiation of settlement and attorneys' fees, the district court must examine the terms of the settlement with a high degree of scrutiny. *See, e.g., Mendoza v. United States,* 623 F.2d 1338, 1358 (9th Cir. 1980).

As set forth elsewhere in this opinion (see *infra* § II.B.2.h), the substantive terms of this settlement do not appear to be collusive. Rather, the terms and conditions of settlement appear to be the product of rational, arms-length negotiations. The settlement of this case contemplates the full renovation of all Krystal restroom facilities in order to achieve full compliance with the ADA; this is the full recovery which plaintiffs could seek through litigation. Moreover, as explained below (see *infra* § II.B.2.c.iii), the schedule for renovation of Krystal's restroom facilities is fair, adequate, and reasonable, given the costs associated with such renovations and the precarious financial condition of the company.

Finally, as explained above, the fee to be paid to class counsel appears to be reasonable, given the nature of this litigation and the work required of class counsel, both to date and in the

future. Under such circumstances, it does not appear that the $50,000.00 fee to be paid to Pittman, Hooks, Dutton & Hollis, P.C., would operate to cloud the judgment of class counsel, or subvert the interests of the class.

For these reasons, neither the amount of the attorneys' fees to be paid to class counsel, nor the fact that the parties discussed this fee amount contemporaneously with the other terms and conditions of settlement, would adversely affect the terms of the settlement or the interests of the plaintiff class as a whole. For the foregoing reasons, the payment of attorneys' fees in the amount of $50,000 to class counsel in this case is fair, adequate, and reasonable.

### iii. Schedule for renovations of Krystal restrooms

Under the terms of the proposed stipulation of settlement, Krystal agrees to renovate all restrooms in 190 Krystal-owned restaurants, so as to render them fully compliant with ADA Accessibility Guidelines, no later than December 31, 2010. Krystal will renovate 10 restaurants during 2001, and 20 restaurants each succeeding year thereafter until all Krystal-owned restaurants have restrooms that are in full compliance with the ADA's Accessibility Guidelines. Krystal's obligation to renovate a particular restaurant (or restaurants) will be voided in the event it closes or sells such restaurant(s) prior to the completion of renovations. (Consent Decree at ¶¶ 7-11).

The settlement proposed by the parties would ensure full compliance with the ADA Accessibility Guidelines in all restaurants owned by Krystal, a result which represents the total recovery requested by Mr. Jones in the complaint and the total recovery to which the class would be entitled should a favorable result be achieved through litigation of this case. (*See* Tr. at 28: 15-18).

23

The schedule for renovation of these facilities is reasonable in light of the significant expenditures of financial resources and time associated with the alteration of 190 restaurants. The cost per unit of renovating these facilities is estimated to be $40,670. (Defendant's Exhibit 15.[9]) This figure has been reduced to current dollars and does not account for future inflation and adjustment. It is also anticipated that each of these renovations will require the temporary closure of the particular restaurant "from seven to twelve days," thereby causing an additional financial impact upon the company. (Tr. at 45: 10-13). Taking into account the direct costs of renovation, as well as the indirect costs associated with loss of sales due to facility closures, the total cost of these proposed renovations is projected to be seven to nine million dollars. (Defendant's Exhibit 15.)

The impact of these costs upon Krystal's current and predicted financial condition is significant. Krystal was purchased by its current owners in 1997. (Tr. at 51: 5-8). Currently, the company "has slightly over 127 million dollars in debt." (Tr. at 52: 4-5). Krystal's current ratio of debt to cash flow is six-to-one, which "puts the company in a position of having to pay a substantial amount of interest relative to its earnings." (Tr. at 52: 15-25). As a result, Krystal has not shown a profit on a cumulative basis since 1997; and, in the year 2000, the company's net loss was in excess of five million dollars. (Tr. at 56: 6-8, 15-17). Further, the company does not anticipate making a profit in calendar year 2001. (Tr. at 59: 12-13).

---

[9]In addition, monies currently available to the company are allocated not only to renovation of the company's restrooms, but also to required capital outlays, technological updating, and facility remodeling, each of which is necessary to ensure the competitive advantage of the company and, in turn, its financial viability. (*See* Tr. at 56: 22 through 58: 11, and 67: 16 through 68: 2.)

24

Given the dismal financial condition of the company, and the significant financial outlay necessary to complete these renovations, it does not appear that an abbreviated schedule for renovations would be financially feasible. As Larry Bentley testified during the final fairness hearing,

[b]ased upon [Krystal's] current financial projections, there simply wouldn't be cash available to do that and also do the other things necessary to maintain the company's viability. So a number of things would happen. First of all, we wouldn't be able to maintain our restaurants in good repair and in good order. That would create not only ——— would not only put us at a disadvantage competitively, but also could create safety hazards. And then potentially, we might be in a position where there just simply wasn't cash available to do 40 [per year], and we would, I expect, wind up here again.

(Tr. at 68: 18 through 69: 4). Under such circumstances, requiring Krystal to complete these renovations in a shortened time frame would not be financially prudent. Given the number of facilities that Krystal has agreed to renovate, and the current financial condition of the company, this court finds the schedule for renovation of these facilities to be reasonable and appropriate. A conservative schedule that actually can be implemented is preferable to a more aggressive schedule that could not be performed.

### d. The recommendations of counsel of record

Counsel of record support and recommend the terms and conditions of the settlement before the court as fair, adequate, and reasonable. It is for this reason that the parties jointly request that the court approve the proposed settlement.

Implicit in evaluating the recommendations of counsel is a requirement that counsel, particularly counsel for plaintiffs, be sufficiently experienced and capable to adequately represent the parties in this suit. Lead counsel for plaintiffs, Andy Hollis, has been engaged in the practice of

25

law for approximately thirty (30) years, during which he has participated in a number of class actions, several of which have involved complex issues and large numbers of class members. (Tr. at 99: 12-13, and 101: 11 through 102: 7). He and his firm are familiar with the distinctive characteristics of class action litigation, including the important fiduciary duty owed to the class as a whole. (Tr. at 102: 16-20). Accordingly, Mr. Hollis and the firm of Pittman, Hooks, Dutton & Hollis, P.C., present sufficient experience and expertise to adequately represent the interests of the plaintiff class.

As the settlement proposal appears to be the product of arms-length negotiations between experienced, knowledgeable attorneys, the recommendations of counsel regarding this settlement are given appropriate weight when reviewing the terms of the agreement.

### e. The future expense and likely duration of litigation if the settlement is rejected

Pursuing this matter through litigation would necessitate additional attorneys' fees and costs. During the final fairness hearing, counsel for plaintiffs testified that he "would not be surprised if 1,500 to 2,500 hours could have been expended [by counsel for plaintiffs] if this thing went through trial." (Tr. at 112: 4-6). As Mr. Hollis added, moreover, it is often the case that an even greater number of hours are expended by defense counsel in pursuing a matter such as this in litigation. (Tr. at 112: 7-11). The parties agreed during the course of the hearing that this matter "easily" could have generated attorneys' fees in the aggregate amount of $500,000. (Tr. at 112: 18-21). Such fees would inure to the benefit of the attorneys involved in the litigation, but not enhance the plaintiffs' ultimate recovery or the ability of Krystal to perform the renovations of its restrooms.

26

In addition, pursuing this matter to litigation would take a substantial amount of time, delaying renovations to Krystal's restroom facilities and deferring final resolution. Under these circumstances, the proposed settlement operates to resolve this case in an expeditious and efficient manner which, in turn, benefits all interested parties.

### f. The recommendation of neutral parties

While the parties initially scheduled a mediation before a neutral third party, they were able to agree upon settlement terms without external assistance. (Tr. at 13: 24 through 14: 6). Thus, the court is unaware of any neutral party which has been involved in this lawsuit, and no recommendations, objections, or disapprovals have been received from any such source.

### g. The number of objectors and the nature thereof

Only four objections were filed by putative class members. One subsequently was withdrawn. The remaining objections, only one of which was timely filed, address three issues: (a) monetary payments to class members; (b) the availability of a jury trial for resolution of these claims; and (c) the proposed schedule for renovations of Krystal's restrooms.[10] These objections are addressed below.

### i. Monetary payments

Two objections filed in this case, by John Redwine and Florence Hall, contend that putative class members should be paid a $10,000 incentive payment, commensurate with that to be awarded class representative Michael L. Jones.

---

[10]One additional objection was filed, but is not relevant to this court's inquiry. John Cantrell simply noted that he desired to become a part of the class action and, accordingly, his submittal is not considered an "objection" to the terms of the proposed settlement.

Monetary damages are not recoverable by private plaintiffs for violations of Title III of the ADA. *See, e.g., Jairath,* 154 F.3d at 1283 (citing 42 U.S.C. § 12188(a)); *Boemio v. Love's Restaurant,* 954 F. Supp. 204 (S.D. Cal. 1997).[11] The only remedy available to private plaintiffs under the Act is an injunction "to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities to the extent required by this sub-chapter." 42 U.S.C. § 12188(a)(2); *see also, e.g., Delil v. El Torito Restaurants, Inc.,* 1997 WL 714866 (N.D. Cal., June 24, 1997) (unpublished decision) ("injunctive relief is the only relief to which a private plaintiff is entitled in a suit under Title III of the ADA"). Thus, members of the plaintiff class would not be entitled to an award of monetary damages, in the event this case were to proceed to trial.

On the other hand, incentive awards may be justified when class representatives make significant contributions to the litigation process. Such awards are designed to compensate representatives for services provided to the class, and to minimize any financial penalty each may suffer as a result of suing on behalf of all, rather than individually. Unlike Michael Jones,[12] the above individuals have not presented, either in their written objections or through oral testimony,

---

[11]*See also Smith v. Wal-Mart Stores, Inc.,* 167 F.3d 286, 292 (6th Cir. 1999); Fischer v. SJB-P.D., Inc., 214 F.3d 1115 (9th Cir. 2000); *Cole v. National Collegiate Athletic Association,* 120 F. Supp. 2d 1060 (N.D. Ga. 2000); *Pona v. Cecil Whittaker's, Inc.,* 155 F.3d 1034, 1038 (8th Cir. 1998); *Doe v. National Board of Medical Examiners,* 9 AD Cas. (BNA) 1791 (E.D. Pa. 1999); *Tatum v. National Collegiate Athletic Association,* 992 F. Supp. 1114 (E.D. Mo. 1998); *Steadman v. Center on Deafness,* 64 F.3d 670 (10th Cir. 1995); *Iverson v. Comsage, Inc.,* 132 F. Supp. 2d 52 (D. Mass. 2001); *Dahlberg v. Avis Rent A Car Sys., Inc.,* 92 F. Supp. 2d 1092 (D. Colo. 2000); *O'Connor v. Metro Ride, Inc.,* 87 F. Supp. 2d 894 (D. Minn. 2000); *Davis v. Flexman,* 109 F. Supp. 2d 776 (S.D. Ohio 1999); *James v. Peter Pan Transit Mgmt., Inc.,* 1999 WL 735173 (E.D.N.C., Jan. 20, 1999) (unpublished decision); *Long v. Long Coast Resorts, Inc.,* 32 F. Supp. 2d 1203 (D. Nev. 1998); *Botosan v. Fitzhugh,* 13 F. Supp. 2d 1047 (S.D. Cal. 1998); *Independent Living Resources v. Oregon Arena Corp.,* 982 F. Supp. 698 (D. Or. 1997); *Powers v. MJB Acquisition Corp.,* 993 F. Supp. 861 (D. Wyo. 1998); *Anonymous v. Goddard Riverside Community Ctr., Inc.,* 1997 WL 475165 (S.D.N.Y., July 18, 1997) (unpublished decision); *Pool v. Riverside Health Servs., Inc.,* 1995 WL 519129 (D. Kan., Aug. 25, 1995) (unpublished decision).

[12]The time and effort expended by Mr. Jones in the course of this litigation were discussed *supra,* in § II.B.2.c.i.

evidence that they are deserving of such an award. Consequently, the court finds that the objections are insufficient to revise the terms of the proposed settlement.

### ii. Jury trial

The objection filed by Florence Hall also asked that a jury trial be held in this case. The seminal civil rights case evaluating the availability of a jury trial in claims for injunctive relief is *Adams v. Fazzio Real Estate Co.*, 268 F. Supp. 630, 640 (E.D. La. 1967), *aff'd*, 396 F.2d 146 (5th Cir. 1968), in which the court held that no jury trial is available under civil rights laws providing solely for injunctive relief. This reasoning applies to Title III of the ADA, which specifically limits private litigants to injunctive relief. *See Gonzales v. National Bd. of Med. Examiners,* 225 F.3d 620, 635 (6th Cir. 2000); *Abbott v. Bragdon*, 882 F. Supp. 181, 182 (D. Me. 1995); *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 119 S. Ct. 1624 (1999). Accordingly, this objection is overruled.

### iii. Schedule for renovations

Finally, Mr. Redwine's objection noted his desire to shorten the time frame for renovation of Krystal's restroom facilities. That particular issue is addressed *supra,* in § II.B.2.c.iii. In light of this court's conclusion that the proposed schedule for renovations is fair, adequate, and reasonable under the circumstances, this objection also is overruled.

## h. The presence or absence of good faith in negotiations, as well as a showing of an absence of collusion

This court does not find that the terms and conditions of settlement are the product of collusion. The negotiations were conducted at arms length. (Tr. at 113: 2-4). Plaintiffs' counsel testified at the hearing that he was not familiar with anyone at Krystal or its legal counsel, Miller &

Martin, prior to this lawsuit. (Tr. at 113: 5-11). No consideration will pass between the parties, other than that previously discussed. (Tr. at 113: 12-18).

Substantively, the terms of the settlement do not appear to be collusive. As set forth above, the terms and conditions proposed by the parties are fair, adequate, and reasonable, and the settlement does not inure to the benefit of legal counsel at the expense of either plaintiffs or the defendant. As such, it appears that the settlement proposal is the product of good-faith, arms-length negotiations between counsel, and not any collusion or improper dealing.

### i.    The ability of the defendant to withstand greater liability than that proposed in the settlement agreement

Details concerning Krystal's financial condition are set forth in § II.B.2.c.iii above. No additional renovations to the Company's restrooms, beyond those currently proposed by the parties, would be required by the ADA. Therefore, the only remaining inquiry is whether Krystal is able financially to accelerate the schedule for renovation of these facilities. Testimony concerning this specific issue was presented at the hearing by Larry Bentley, Krystal's vice-president and chief financial officer. (Tr. at 50: 18-19). When asked whether the renovations to the company's restrooms could be completed in less than 10 years, Mr. Bentley responded that "[i]t would not be a prudent financial track for us to move down." (Tr. at 67: 13-15). Mr. Bentley's elaboration on this statement is set forth above in § II.B.2.c.iii. The court is satisfied that Krystal does not have the financial resources to withstand greater financial liability than that proposed in the settlement agreement. Given the highly competitive nature of the food service industry and the current financial condition of the defendant, it is this court's conclusion that the proposed ten-year schedule for complete renovation of Krystal's non-compliant restrooms is fair, adequate, and reasonable.

30

## III. CONCLUSION

For all of the foregoing reasons, and upon consideration of other evidence of record, this court finds that the terms of the proposed Consent Decree are fair, reasonable, and adequate under the circumstances, and that the interests of the class as a whole are better served if this action is resolved by settlement, rather than pursued by means of separate actions. An appropriate judgment consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _12th_ day of July, 2001.

United States District Judge

31